UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

MICHAEL MARSH,

                Petitioner,                  **REPORT AND RECOMMENDATION**

    -v-

                                                      03-CV-329 (NGG)(LB)

JOHN T. SMITH,

                Respondent.
-------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

The Honorable Nicholas G. Garaufis, United States District Court Judge, referred this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 for a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons that follow, it is respectfully recommended that the petition should be denied.

## BACKGROUND

I. <u>Factual History</u>

Shortly before midnight on January 22, 1999, Shahid Mahmood ("Mahmood"), a cab driver, drove petitioner, Michael Marsh, from Manhattan to the corner of Dean Street and Classon Avenue in Brooklyn. (Tr. 165).[1] Petitioner then placed a knife against Mahmood's neck (Tr. 166-67) and took from Mahmood about $110 (Tr. 169), a cell phone, a cell phone charger, and Mahmood's car key. (Tr. 167).

At about 5 a.m. on January 23, 1999 another cab driver, Tariq Hussain ("Hussain"), drove petitioner to the corner of Herkimer Street and Kingston Avenue in Brooklyn. (Tr. 105). Shortly after Hussain pulled the car over and asked petitioner for the fare, petitioner stabbed

---

[1]"Tr.__" refers to pages in the trial transcript.

Hussain in the neck. (Tr. 104). When Hussain tried to escape, petitioner stabbed him again about three or four times (Tr. 106) in the shoulder, arm, and back, seriously injuring him. (Tr. 107). Petitioner then demanded money from Hussain. (Tr. 106). After petitioner stabbed Hussain about nine or ten times (Tr. 107), Hussain managed to close the taxicab's partition; petitioner then exited the moving vehicle and ran away. (Tr. 108).

Petitioner, was arrested the same night, January 23, 1999 while a passenger in another taxicab. Police recovered Mahmood's cellphone and a knife from petitioner.

II. Pre-Trial Proceedings

Prior to trial, the Supreme Court, Kings County granted petitioner a hearing on his motion to suppress physical evidence and identification testimony. At the hearing, Detective Walsh testified that shortly after 11:00 p.m. on January 23, 1999, he and Detective Laura were in the process of carrying out an order, from the lieutenant, to stop taxicabs that fit a robbery pattern. (H. 9). The goal of this procedure was to apprehend the perpetrator of recent robberies. The pattern dictated that the perpetrator was a black male about six feet tall, in a yellow cab with Pakistani or Indian drivers who would drive the perpetrator from lower Manhattan, over the Manhattan Bridge, into Brooklyn, where the robber would rob the driver at knife point. (Tr. 8).

Detective Walsh testified that at about 11:40 p.m. on January 23, 1999, Abu Chowdhury ("Chowdhury"), a yellow-cab driver (Tr. 44) who appeared to be Indian or Pakistani (H. 11) was driving petitioner from Manhattan to Brooklyn. (Tr. 45). Petitioner, a black male, was sitting in the back seat of the taxicab talking on a cellular phone. (H. 11). When Chowdhury arrived at the corner of Fulton Street and Bedford Avenue in Brooklyn (Tr. 47) police detectives stopped the cab (Tr. 47). Shortly after Chowdhury pulled over, both detectives walked towards the

2

driver's side of the cab. (H. 13). Detective Walsh observed petitioner, who was staring at Detective Walsh with "eyes [that] opened up like bugged-eye . . . [,]" petitioner then "whipped himself over to the right and started doing something on his right side." (H. 13-14). Detective Walsh stated that, at this point, he "alerted [his] partner [about petitioner's movements]." (H. 15). As the detectives approached petitioner, petitioner exited the cab, and "looked like he wanted to push past [Detective Laura]." (H. 16). The detectives asked petitioner two or three times to turn around and place his hands on the trunk; when petitioner did not do this, Detective Walsh grabbed petitioner and turned him toward the trunk of the cab. (H. 16). After noticing how nervous petitioner was, and after Detective Laura "alerted [Detective Walsh] that he felt a knife in [petitioner's] pocket[,]" Detective Walsh frisked petitioner. (H. 17). The detectives recovered a cell phone and a folding pocket knife, that appeared to have dried blood on it. (H. 18). The detectives then arrested petitioner. (Tr. 48).

On January 24, 1999, approximately one day after the detectives arrested petitioner, Mahmood identified petitioner from a lineup and identified his cell phone that petitioner had stolen. (H. 72).[2] Later that day, Hussain, who was in the hospital, identified petitioner as his assailant, from a photo-array. (H. 75-78).

Petitioner's defense counsel argued at the hearing that the detectives did not have sufficient information to stop the cab, that the detectives lacked probable cause to stop the cab, that the detectives should not have blocked petitioner's egress from the cab nor should the detectives have placed petitioner against the cab and frisked him. (H. 91). The hearing court denied petitioner's motion to suppress evidence, holding that the officers' stop of petitioner's cab

---

[2]"H.__" refers to pages in the hearing transcript.

3

was a lawful "pattern stop." (H. 96). The hearing court also held that petitioner's nervous reaction and his movements inside the cab provided further justification for the conduct of the police, and that safety concerns justified the patdown of petitioner. (H. 96-98).

III. Trial

At trial, Mahmood testified to the events of January 22, 1999, the night on which he was robbed, and identified petitioner as the robber. Mahmood also identified the knife that petitioner used (Tr. 178) and his cell phone that the detectives recovered from petitioner. (Tr. 179-80). Hussain testified to the events of January 23, 1999, the morning on which petitioner robbed and stabbed him, and identified petitioner in court as the man who entered his taxicab on that night. (Tr. 100). At the end of trial, the jury found petitioner guilty of Robbery in the First Degree and Attempted Robbery in the First Degree. (Tr. 450). On December 21, 1999, petitioner was sentenced, as a persistent violent felony offender, to two concurrent terms of imprisonment of twenty-five years to life.

IV. Procedural History

Petitioner appealed from his conviction to the New York Supreme Court, Appellate Division, Second Department, claiming that the hearing court should have suppressed evidence as the fruit of an improper roving patrol stop. Petitioner argued that the detectives "followed no oral or written guidelines concerning which cabs to stop, supplied no records to the court about which cabs were stopped, and did not notify their supervisors about their decisions" (Defendant's Main Appellate Division Brief ("Def. Brief") at 19; see also Def. Brief at 25, 31). Petitioner argued that the prosecution failed to meet their burden in establishing the legality of the detectives' conduct, and "failed to submit . . . empirical evidence that this type of stop was a

reasonably effective means of furthering the State interest in finding a robbery perpetrator that could not be accomplished by less intrusive methods" (Def. Brief at 26, 28, and 32) or that the officers acted "pursuant to a plan embodying explicit neutral limitations on the conduct of individual officers" (Def. Brief at 24). Petitioner also argued that the detectives lacked reasonable suspicion to detain him. (Def. Brief at 27). Respondent maintained that petitioner had not presented these specific claims to the hearing court. (People's Appellate Division Brief at 30-31).

On October 2, 2000, the Appellate Division affirmed petitioner's judgment of conviction, holding that petitioner failed to preserve for appellate review his claim "that the hearing court erred in finding that the stop of the taxicab was reasonable" because petitioner did not raise the specific bases for his claim in the hearing court. People v. Marsh, 289 A.D.2d 510 (2d Dep't 2001). The Appellate Division also held that, in any event, the hearing court's determination was proper because the taxi in which petitioner was a passenger fit the pattern that caused the detectives to stop it during investigation. Id. The Appellate Division also held that the frisk of petitioner was justified and that the detectives had probable cause to arrest petitioner because, among other things, petitioner attempted to hide something when detectives approached the taxi and petitioner was carrying a knife with what appeared to be dried blood. Petitioner applied for leave to appeal to the New York Court of Appeals; his request was denied on March 25, 2002. People v. Marsh, 97 N.Y.2d 757 (2002).

V. Federal Habeas Corpus Petition

In his instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, petitioner claims that his conviction was unconstitutional as it was based on evidence obtained by an

unlawful stop of the cab and by an unlawful stop and frisk of petitioner. Petitioner alleges that the detectives "acted in an excessively intrusive manner and without written guideline." (Defendant's Affirmation at 2; Def. Brief at 28-29).

## DISCUSSION

I. <u>Procedural Bar</u>

Respondent contends that petitioner's claim that the roving stop was unconstitutional is procedurally barred from this Court's review. The Appellate Division held that petitioner's "contention ... that the stop of the taxi cab in which he was a passenger was [un]reasonable is unpreserved for appellate review" under New York Criminal Procedure Law section 470.05(2). See <u>People v. Marsh</u>, 289 A.D.2d 510, 510 (2d Dep't 2001).

"Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice." <u>Fama v. Comm'r Corr. Serv.</u>, 235 F.3d 804, 809 (2d Cir. 2000). "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985). "[A] federal claimant's procedural default precludes federal habeas review . . . only if the last state court rendering a judgment in the cases rests its judgment on the procedural default." <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989). Therefore, a state court's invocation of the procedural bar in cases where the court rules that a claim is not preserved for appellate review, even when the court rules in the alternative on the merits of the claim, will preclude federal review of the claim. See <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990) (concluding that "Federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and

adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

Under New York Criminal Procedure Law Section 470.05(2), in order to preserve an issue for appellate review, the party claiming error must protest the particular ruling or instruction "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2) (McKinney 2003). Although Section 470.50(2) can be an adequate state law ground, see Garcia v. Lewis, 188 F.3d 71 (2d Cir. 1999), there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Lee v. Kemna, 534 U.S. 362, 376 (2002). For example, the application of Section 470.50(2) is inadequate where counsel raised an objection but failed to reiterate it after the hearing court's ruling. Cotto v. Herbert, 331 F.3d 217 (2d Cir. 2003).

However, here it could be questioned whether the procedural bar as applied to petitioner's claim is adequate. Pursuant to New York law, "even in the absence of an objection on the specific ground proffered, [a claim is preserved] if the trial court expressly decided the question so raised." People v. Johnson, 144 A.D.2d 490 (2d Dep't 1988). Petitioner's trial counsel argued that the stop was made without reasonable suspicion and the prosecution countered that the stop was a lawful roving stop executed pursuant to a pattern involving a specific geographic area and criteria in a Robbery Pattern sheet. H. 92-93 (the prosecutor stated, "police don't need to articulate and visualize suspicion when they stop a car pursuant to any type of road block or what they refer to as a roving patrol"). The prosecutor specifically cited People

7

v. Scott, 63 N.Y.2d 518 (1984) which applied suspicionless checkpoint stop analysis, which formed the basis for petitioner's appellate argument. (Id.).

The hearing court had the opportunity to consider the type of stop at issue and its constitutional requirements and upheld the constitutionality of the stop stating:

> It was a specific pattern, a specific set of criteria and only those vehicles containing that type of driver, that type of passenger coming from lower Manhattan to Brooklyn, only those vehicles would be stopped and the number of stops were very limited, therefore this particular method of police investigation and stop is clearly constitutional.

H. 97.

Thus, the hearing court expressly decided the constitutionality of the stop that petitioner challenges here. See Preiser, Supp. Practice Commentaries McKinney's Cons. Laws of NY, Book IIA, 1988 Pocket Part, CPL 470.05, at 5 (the amendment allowing an issue to be preserved even if it is overlooked by counsel but decided by the court should benefit defense on motion to suppress where courts tend to preserve matters not specifically relied on by the defendant); see also People v. Edwards, 95 N.Y.2d 485 (2000) (where defendant requested an in camera examination of informant who led to the arrest, defendant's appeal based on the trial court's denial was preserved because "probable cause to arrest was expressly decided in written decision"); People v. Ayala, 142 A.D.2d 148, 534 N.Y.S.2d 1005 (2d Dep't 1988) (although party overlooked an argument, the trial court expressly decided the issue of whether prior testimony from a Wade hearing was admissible and therefore preserved the issue).

Nonetheless, even assuming petitioner's claim regarding the constitutionality of the stop is not procedurally barred, all of his claims challenging the suppression court's rulings are barred on habeas corpus review by Stone v. Powell, 428 U.S. 465 (1976).

8

## II. Stone v. Powell

Under Stone v. Powell, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494. Thus, a federal habeas court may review a state prisoner's Fourth Amendment claim only if 1) the state has not provided any corrective procedures to redress the alleged Fourth Amendment violation or 2) the prisoner was precluded from using that mechanism "because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

"[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp. 1988), as being facially adequate." Capellan, 975 F.2d at 70 (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)). Nonetheless, "full and fair" consideration of a claim is not limited to the procedural opportunity to raise or present a Fourth Amendment claim but "contemplate[s] recognition and at least colorable application of the correct Fourth Amendment constitutional standards." Capellan, 975 F.2d at 71 (quoting Gamble v. Oklahoma, 583 F.2d 1161 (10th Cir. 1978)). As such, "where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process (federal habeas relief) may still be warranted." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)(en banc). Although the Second Circuit has not precisely defined what constitutes an "unconscionable breakdown," it has stated that some sort of "disruption or obstruction of a state proceeding" is typical of such a failure. See Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987). For

example, where a petitioner can prove that no state court had conducted a "reasoned method of inquiry into relevant questions of fact and law" there is an unconscionable breakdown. See Cruz v. Alexander, 477 F. Supp. 516, 523 (S.D.N.Y 1979).

Here, the state court record demonstrates that petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claims. First, the Supreme Court, Kings County, provided a corrective procedure to redress the alleged Fourth Amendment violation by holding a hearing on petitioner's motion to suppress the physical evidence and identification testimony. Second, the hearing court applied Fourth Amendment constitutional standards, assessing the intrusion involved, the basis for the stop and frisk, and the limitations on the officers' discretion. The hearing court stated that the roving stops were limited to cabs with only one passenger and a driver who was Indian or Pakistani; officer discretion was therefore limited to the particular pattern of driver, passenger, and route. The Court stated "[i]t's clear that the police investigated these incidents very thoroughly with great care and designed a pattern stop which was as limited as possible in scope and in time. It was certainly reasonable." (H. 96). Since the Court concluded that the stop of the taxi was reasonable, it found the seizure and frisk of petitioner reasonable after petitioner's "furtive, nervous reaction that he had, attempt[ed] to put something in his pocket, attempt[ed] to back away." (H. 98.). Regardless of whether this Court agrees with the hearing court's findings, cf City of Indianapolis v. Edmond, 531 U.S. 32, 44 (2000) ("the Fourth Amendment would almost certainly permit an appropriately tailored roadblock set up to thwart an imminent terrorist attack or to catch a dangerous criminal who is likely to flee by way of a particular route") with People v. Thomas, 185 Misc. 2d 112, 711 N.Y.S.2d 679 (Sup. Ct. New York County 2000) (prior robberies occurring one month prior to the suspicionless stop

was not a sufficient basis for the stop, in particular where the descriptions of the perpetrators were limited to race), the hearing court engaged in "reasoned method of inquiry into the relevant questions of law and fact" for Fourth Amendment analysis. Cruz, 477 F. Supp. at 523.

Petitioner was not precluded from raising his Fourth Amendment claim. Petitioner availed himself of the state procedures by both challenging the cause for the police's stop of the taxicab he was in and by challenging the police's stop and frisk search of his person by moving to suppress the physical evidence. Even though petitioner argues there was no opportunity to raise his argument that the police failed to constitutionally tailor their roving stop, (see Affirmation at 1-2), such arguments are routinely raised at suppression hearings. See e.g. In the Matter of Muhammad F., 94 N.Y.2d 136, 140-141 (1999). In fact, the lawfulness of the "roving stop" was raised by the prosecutor. (H. 92-93). Moreover, any argument that the basis for the stop was discriminatory was not made on appeal, thereby foreclosing this court's review. Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)(a claim is deemed exhausted but procedurally barred by N.Y. Crim. Proc. L. 440.10(2)(c)[3] when petitioner raises it for the first time in his habeas petition).

Therefore, there was no breakdown in the state court process, the hearing court applied Fourth Amendment constitutional standards, and habeas review of petitioner's claims is foreclosed by Stone v. Powell.

---

[3]This provision provides that "the court must deny a motion to vacate a judgment when: [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such motion, adequate review of the ground or issue raised on the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

## CONCLUSION

Petitioner's application for a writ of habeas corpus should be denied as his claims are barred from this Court's review under Stone v. Powell, 428 U.S. 465 (1976).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000). See Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

Signed /
_____
Lois Bloom
United States Magistrate Judge

Dated: May 2, 2005
      Brooklyn, New York

Copies to:

HON. NICHOLAS G. GARAUFIS, U.S.D.J.

MICHAEL MARSH, Pro Se Petitioner
00-A-0466
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589

SETH LIEBERMAN, Esq.
Assistant District Attorney
350 Jay Street
Brooklyn, NY 11201